UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                            :
COACH, INC. et al.,                                        :
                                                                            :          11 Civ. 3535 (PAE)
                              Plaintiffs,     :
                                                          :          OPINION & ORDER
                   -v-                                   :
                                                          :
HORIZON TRADING USA INC. et al.,                 :
                                                          :
                            Defendants.   :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Coach") bring claims of trademark infringement, false designation of origin, copyright infringement, and state statutory claims for trademark infringement, among other state claims, against defendants Horizon Trading USA Inc. ("Horizon Trading") and Ke Yi Fang ("Fang").[1]  Coach alleges that Horizon infringed its exclusive right to use the "Signature C" trademark, and seeks to enjoin defendants from using the allegedly infringing marks.  Coach also requests an award of statutory damages under 15 U.S.C. § 1117(c), together with attorney's fees, costs, and investigative fees under 15 U.S.C. §§ 1117(a), (b).  Horizon denies Coach's claims.

       On June 22, 2012, Coach moved for summary judgment on these claims.  For the reasons that follow, Coach's motion is granted as to each claim, with the exception of Coach's claims for deceptive trade practices and false advertising, on which summary judgment is granted in favor of defendants.

---

[1] Except as otherwise noted, references to "Horizon" herein refer to the defendants collectively.

I.    **Background**[2]

   **A. The Parties**

Coach manufactures, markets, and sells leather and mixed-material products, including handbags, wallets, and accessories. Lau. Decl. ¶ 3. Coach uses a variety of trademarks, trade dresses, and design elements/copyrights in connection with the advertisement and sale of its products. *Id*. ¶ 4. One such mark is the "Signature C Mark," which Coach uses on products such as sunglasses, eyeglass cases, leather goods, and clothing. *Id*. ¶ 8. Coach has registered the "Signature C Mark" with the United States Patent and Trademark Office ("PTO"). *Id*. ¶ 9; Ex. A. Additionally, Coach has registered copyrights with the United States Copyright Office for several variations of the "Signature C" design. *Id*. ¶ 15; Ex. B.

Horizon Trading is an importer, exporter, and wholesaler of sunglasses and other goods. Davis Decl. Ex. B (Plaintiffs' Requests for Admission to Horizon) ("Horizon Admissions") ¶ 48; Ex. C (Plaintiffs' Requests for Admission to Fang) ("Fang Admissions") ¶ 16. Horizon Trading is a New York corporation, which conducts business at 44 West 29th Street, New York, New

---

[2] The Court's account of the underlying facts of this case is drawn from the parties' submissions in support of and in opposition to the instant motion. Specifically, Coach has submitted declarations from Ethan Y. Lau ("Lau. Decl."), Jonathan D. Davis ("Davis Decl."), Cara Amore ("Amore Decl."), and a reply declaration from Jonathan D. Davis ("Davis Reply Decl."). Horizon has submitted declarations from Mingli Chen ("Chen Decl.") and Suhuan Wang ("Wang Decl."). Coach submitted a Local Rule 56.1 Statement of Material Facts (Dkt. 28) ("Pl. 56.1"). Horizon did not. Where facts stated in a party's Statement of Material Facts are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). References herein to a paragraph in a party's 56.1 statement incorporate by reference the evidentiary materials cited in that paragraph.

York. Horizon Admissions ¶ 102; Fang Admissions ¶ 105. Ke Yi Fang has an ownership interest in Horizon Trading. Horizon Admissions ¶ 1; Fang Admissions ¶ 1.

### B. Relevant Events

The events that precipitated this lawsuit are as follows. Coach received information that a store located at 44 West 29th Street in New York City (the "Horizon Store") was selling allegedly counterfeit Coach sunglasses. Lau Decl. ¶ 18. Coach also learned that the store was affiliated with a company called Horizon Trading USA Inc., which was owned by Fang. *Id.* Coach's Legal Department retained Allegiance Protection Group ("APG"), a private investigative firm, to investigate these activities. *Id*. ¶ 19. On March 24, 2011, on behalf of Coach, APG's General Manager, Cara Amore, bought from Horizon, for $7, sunglasses that use a design consisting of the stylized letters "G" and "C". *Id*. ¶¶ 20–21; Amore Decl. ¶ 4. That same day, Amore also purchased different sunglasses from Horizon, for the same price. *Id*. ¶ 5. Those sunglasses use a design consisting of the stylized letter "C" in various combinations, orders, and directions. *Id*. Coach and APG examined both of the Horizon products purchased by Amore at the Horizon Store, and determined that neither was an authentic Coach product. *Id.* ¶ 8; Lau Decl. ¶¶ 24–25. An authentic pair of Coach sunglasses retails for approximately $185. Lau. Decl. ¶ 25.

### C. Procedural History

On May 24, 2011, Coach filed a Complaint. Dkt. 1. On July 22, 2011, defendants filed two separate Answers. Dkt. 12–13. Plaintiffs represent, and defendants do not dispute, that defendants failed to provide written discovery as required. *See* Pl. Br. 2.[3] On June 22, 2012,

---

[3] References to the parties' briefs are made as follows: "Pl. Br." refers to Coach's memorandum of law in support of its motion for summary judgment (Dkt. 32); "Def. Br." refers to Horizon's

3

Coach moved for summary judgment. Dkt. 27. On July 14, 2012, defendants filed a brief in opposition. Dkt. 33–34. On July 23, 2012, Coach filed a reply. Dkt. 36.

## II. Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

---

memorandum of law in opposition to that motion (Dkt. 34); and "Pl. Reply Br." refers to Coach's reply memorandum (Dkt. 36).

### III. Discussion

In support of its motion for summary judgment, Coach primarily relies upon defendants' admissions, as fairly derived from defendants' unexcused failure to respond to Coach's requests for admission. *See* Fed. R. Civ. P. 36(a)(3). Coach also argues that summary judgment is warranted even apart from these admissions because defendants' "GC" and "CC" marks are demonstrably counterfeit.

In assessing Coach's motion, the Court first considers the effect, under Rule 36, of defendants' failure to respond to Coach's requests for admission. Next, the Court considers Coach's substantive claims. Finally, the Court addresses statutory damages.

#### A. Defendants' Failure to Respond to Requests for Admissions

Under Fed. R. Civ. P. 36(a)(1), "[a] party may serve on any other party a written request to admit . . . the truth of any matters . . . relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." A matter is deemed admitted "unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Fed. R. Civ. P. 36(a)(3). Coach served defendants with requests for admission on December 15, 2011, Davis Decl. ¶ 10; Ex. D, and defendants failed to respond within 30 days. Nor did defendants at any point seek an extension of time to respond to those requests. Defendants attempt to explain their failure to respond by asserting that: (1) perhaps Coach's request was sent to defendants' counsel, Mingli Chen, Esq., at the wrong address; and (2) perhaps Coach did not serve the requests at all, because, despite having received an extension, Coach served the requests by the original deadline of December 15, 2011. Both excuses are demonstrably bogus.

As to defendants' first argument, Coach addressed the requests to "Mingli Chen, Esq." at "38-21 Main Street, Suite 3D, Flushing, New York." Davis Decl. Ex. D. The requests were delivered by Federal Express ("FedEx"). FedEx issued plaintiffs' counsel a delivery confirmation, by fax, confirming that the requests had been delivered on December 16, 2011. That confirmation lists Mingli Chen, Esq. as the recipient. Davis Reply Decl. Ex. F. It states that the package was delivered to "13620 38TH AVE STE 3D," where it was signed for by "J. Chung." *Id.* Chen has explained that, on March 24, 2011, the postmaster asked his firm to begin using the street address "136-20 38th Street." Chen Decl. ¶ 8. The two addresses, however, appear to relate to the same office and Chen does not suggest otherwise.[4] Significantly, Chen has used both addresses in the course of his dealing with the Court and opposing counsel in this case. In his notice of appearance, filed with the Court on June 30, 2011, Chen used the address "136-20 38th Avenue, Suite 3D, Flushing, New York 11354." Dkt. 8–9. However, on that very same day, Chen sent an email to the Court, listing his address as 38-21 Main Street. Davis Reply Decl. Ex. A. Chen also listed the 38-21 Main Street address in emails to plaintiffs' counsel on September 13, 2011, October 14, 2011, and November 3, 2011. Davis Reply Decl. Exs. B–E. Thus, Chen has demonstrably represented to Coach and to the Court that he can be reached at the 38-21 Main Street address *and* the 136-20 38th Ave address. Under these circumstances, Chen cannot be heard to complain that the requests were improperly addressed.

Further, "[u]nder general New York law, [] the Second Circuit has indicated that mailing a letter creates a presumption that the addressee received it." *Bronia, Inc. v. Ho*, 873 F. Supp.

---

[4] The two addresses, while numerically different, actually represent the same building. *See* Bulletin of the New York City Board of Standards and Appeals, Vol. 90, Nos. 15–16 (April 7, 2005), *available at* http://www.nyc.gov/html/bsa/downloads/pdf/2005/vol-90nos15-16.pdf (referring to the address in question as "136-20 38th Avenue, (a/ka/ 38-21 Main Street)").

854, 859 (S.D.N.Y. 1995) (citing *Meckel v. Contl. Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985)). "To invoke the presumption, a party must first produce evidence of mailing." *Id.* Coach has done so, in the form of the FedEx delivery receipt listing an address given by Chen himself to the Court and to counsel as his business address, Davis Reply Decl. Ex. F, as well as an affidavit of Lily Hoang, who mailed the requests via FedEx. Davis Decl. Ex. D. Because defendants have offered no evidence whatsoever rebutting this presumption of receipt, they cannot now claim that they did not receive the requests for admission.

As to defendants' second argument, it is irrelevant that Coach served the requests for admission on December 15, 2011, despite the fact that the parties had agreed to extend the deadline for service of such requests beyond that date. Nothing in the agreement between the parties to extend the deadline precluded Coach from serving its requests before that date. Davis Decl. Ex. A. Further, Coach has demonstrated, via the receipt from FedEx, that the requests, mailed to Mr. Chen, were received and signed for at his law office. Davis Reply Decl. Ex. F.

Pursuant to Rule 36(a)(3), the defendants were required to respond to Coach's requests for admission within 30 days. Because the defendants failed to do so, the matters of fact contained in the requests for admission are deemed admitted. *See SEC v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 U.S. Dist. LEXIS 18556, at *14 (S.D.N.Y. Sept. 30, 2002) ("Rule 36 admissions may be used for Rule 56 summary judgment.").

That said, "Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact. . . . To force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted." *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973). Therefore, only proper requests for admission will be deemed admitted. Although most of Coach's requests for admission were proper, several were not, as

7

they ask defendants to admit to legal conclusions. For example, Coach asks defendants to admit that the sunglasses depicted in various exhibits are counterfeit goods; to admit that those sunglasses infringe the Signature C Mark; and to admit that defendants sold "thousands of Infringing Products." Horizon Admissions ¶¶ 88–91, 103; Fang Admissions ¶¶ 92–95, 107. Although those legal conclusions may logically follow from the facts as admitted, they may not be deemed admitted by virtue of defendants' failure to respond.

### B. Coach's Claims

#### 1. Trademark Infringement/False Designation of Origin

Coach brings claims under section 32 of the Lanham Act, 15 U.S.C. § 1114, and section 43(a) of that Act, 15 U.S.C. § 1125(a). Although section 32 concerns registered marks, whereas section 43(a) concerns unregistered, common law marks, *see Virgin Enters Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003), the same analysis applies to both provisions, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114–16 (2d Cir. 2006). That is, "[t]o prevail on a trademark infringement claim under Sections 32 and 43(a) of the Lanham Act, a plaintiff must demonstrate (1) that it has a valid mark entitled to protection and (2) that the defendant's use of it is likely to cause confusion." *Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06 Civ. 3140 (RJH), 2011 U.S. Dist. LEXIS 94000, at *9 (S.D.N.Y. Aug. 19, 2011) (alterations omitted) (quoting *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999)).

"A certificate of registration with the Patent and Trademark Office is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *See K2 Advisors, LLC v. K2 Volatility Fund, LP*, No. 02 Civ. 3984 (AGS), 2002 U.S. Dist. LEXIS 18801, at *20 (S.D.N.Y. Oct. 4, 2002) (alterations omitted) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital*

*Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)).  There is no dispute that Coach is the owner of the Signature C Mark.  Lau Decl. ¶¶ 8–9; Ex. A.  The mark is lawfully registered with the Patent and Trademark Office, widely recognized by consumers, and entitled to protection.  The first element is, therefore, satisfied.

In considering the likelihood of confusion, courts in this Circuit generally look to the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  In doing so, "district courts must be careful to maintain a focus on the ultimate issue of the likelihood of consumer confusion."  *Malletier v. Burlington Coat Factory Warehouse, Corp.*, 426 F.3d 532, 538 (2d Cir. 2005).  However, where items are counterfeit, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion."  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *see also Queen Bee of Beverly Hills*, 2011 U.S. Dist. LEXIS 94000, at *10.  The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

Defendants have admitted that their sunglasses are likely to cause confusion.  *See* Horizon Admissions ¶¶ 86–87; Fang Admissions ¶¶ 90–91.  But even ignoring these admissions, the second factor is still met, because defendants' marks are demonstrably counterfeit:  As described below, they are substantially indistinguishable from Coach's mark.

Defendants argue that they have permission to use a "GC" mark, which is a registered trademark of the USA Tiger Group Inc.  Def. Br. 2.  However, the "GC" mark that defendants claim to have used, which is attached to its declaration, is unlike the one used on the first pair of allegedly infringing sunglasses.  *Compare* Chen Decl. Ex. B, *with* Amore Decl. ¶ 4.  The USA Tiger Group Inc.'s trademark contains a thick "G" with a stylized finish at both the top end and

9

the middle line, alongside a thick "C" that narrows towards the tips and comes to a fine point. *See* Chen Decl. Ex. B. That, however, is not the mark that appears on the first pair of the allegedly infringing sunglasses that defendants sold, which does not even appear to contain a "G." Moreover, the sunglasses use a thick "C" that—unlike the USA Tiger Group mark—does not narrow. Nor does the "C" come to a point; instead, it is substantially indistinguishable from the "C" used in Coach's Signature C Mark. *See* Amore Decl. ¶ 4. Defendants' defense that they were using a registered trademark in a lawful manner is, therefore, wholly without merit.[5]

The same is true of the second pair of sunglasses that defendants sold, which used a "CC" mark. Defendants contend that the "CC" mark is "completely different" from Coach's "CC" mark. Def. Br. 2. That argument is baseless. Defendants' "CC" sunglasses use a pattern of "C"s in combinations identical to Coach's Signature C Mark: specifically, two "C"s facing one another (*i.e.,* one "C" is backwards), next to a pair of "C"s facing downwards. *See* Amore Decl. ¶ 5. That the "C"s used by defendants slightly overlap (unlike Coach's, which only touch), and reach a fine point (whereas Coach's are flat and stylized at the top of the "C"), does not distinguish defendants' mark sufficiently from Coach's. Indeed, at least one other court found marks similar to defendants' "CC" marks "not distinguishable from the Coach products and

---

[5] Even assuming, *arguendo*, that the Court were to find that defendants were using the USA Tiger Group mark, it does not follow, as defendants appear to suggest, that such use would preclude a finding of infringement of Coach's mark. Although the fact of registration with the PTO is *prima facie* evidence that that the mark is valid, and thereby confers a procedural advantage on the registrant, the opposing party can still "overcome the presumption that the purchasing public perceives the mark to be inherently different." *Lane Capital Mgmt.*, 192 F.3d at 345; *see also Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 461 F. Supp. 1055, 1058 (N.D.N.Y. 1978) ("Mere registration . . . does not foreclose attack upon the validity of the trademark."). For the reasons stated above, the substantial similarity between the marks suggests that Coach could overcome any applicable presumption of validity. Indeed, Coach has already sued USA Tiger Group for using this mark, and obtained a settlement that included a consent order barring USA Tiger Group from selling infringing goods. *See Coach v. USA Tiger Group, Inc.*, No. 10 Civ. 8400 (DLC) (S.D.N.Y. Dec. 21, 2011) (Dkt. 19).

marks." *Coach, Inc. v. Abner's Fashion*, No. cv-08-8191, 2009 WL 4810179, at *2 (C.D. Cal. Dec. 7, 2009). Accordingly, the marks used on both pairs of sunglasses are "counterfeit" and, therefore, are by their very nature likely to cause confusion. *Duty Free Apparel, Ltd.*, 286 F. Supp. 2d at 287.

For the foregoing reasons, summary judgment in Coach's favor is merited on these claims.

### 2. Copyright Infringement

Coach also brings a claim for copyright infringement under 17 U.S.C. § 501. "To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "In the absence of direct evidence of copying, a plaintiff can circumstantially prove that a defendant copied her work by showing both the defendant's 'access to the copyrighted work' and the 'substantial similarity of protectible material in the two works.'" *Latimore v. NBC Universal TV Studio*, No. 11-1202-cv, 2012 U.S. App. LEXIS 10347, at *2 (2d Cir. May 23, 2012) (quoting *Williams*, 84 F.3d at 587). "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Latimore*, 2012 U.S. App. LEXIS 10347, at *2 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)).

Here, it is undisputed that Coach owns a valid copyright for the "Signature C" design. Lau Decl. ¶ 15; Ex. B. Defendants also admit that they had access to and copied Coach design elements. Horizon Admissions ¶ 96; Fang Admissions ¶ 100. Finally, defendants admit that the

design elements on their products are substantially similar to Coach's "Signature C" design. Horizon Admissions ¶¶ 97–98; Fang Admissions ¶¶ 101–102. These admissions establish defendants' liability for copyright infringement.

In any event, even if there were no such admissions, an ordinary observer would "be disposed to overlook [the disparities between the two items], and regard the aesthetic appeal as the same," *Latimore*, 2012 U.S. App. LEXIS 10347, at *2, such that there is clearly a substantial similarity between them. Indeed, as noted, another court, dealing with counterfeit Coach marks similar to those at issue here, held that the defendants' products and marks were "not distinguishable from the Coach products and marks." *Abner's Fashion*, 2009 WL 4810179, at *2. Some of those marks used combinations of "C"s and "O"s, others used "G"s facing various directions, but all were held to infringe Coach's marks. *Id.* So, too, here: Defendants' marks use either combinations of "G"s and "C"s or just "C"s in the formation of a figure-eight, and these letter combinations and the styling of the letters closely resemble the marks held to infringe Coach's marks in *Abner's Fashion*. Accordingly, summary judgment is merited in Coach's favor.

### 3. State Law Trademark Infringement

Coach brings claims under New York state law for trademark infringement. "[T]he standards for trademark infringement . . . under New York common law are essentially the same as under the Lanham Act." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297–98 (S.D.N.Y. 2002); *see also Bi-Rite Enters., Inc. v. Button Master*, 555 F. Supp. 1188, 1193 (S.D.N.Y. 1983) ("[T]he essential elements of state . . . trademark infringement claims are but a restatement of unfair competition under the Lanham Act."). Because the Court has granted summary judgment on Coach's claims for trademark infringement

under the Lanham Act, it also grants summary judgment in Coach's favor on its state law infringement claim.

Coach also brings claims under New York General Business Law sections 349 and 350 for deceptive trade practices and false advertising. However, the majority view in this circuit is that "trademark . . . infringement claims are not cognizable under sections 349 and 350 . . . unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463 (SAS), 2012 WL 1450420, at *3 n.21 (S.D.N.Y. Apr. 23, 2012) (alterations omitted); *see also Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No 08 Civ. 0068, 2010 WL 2133937, at *15 (E.D.N.Y. Mar. 11, 2010) (Report & Rec.) (collecting cases), *adopted by* 2010 WL 2160058 (E.D.N.Y. May 27, 2010). Coach alleges that defendants' unauthorized use of Coach's marks is "misleading the public in material respects." Compl. ¶ 102. But "[t]his alleged injury— confusion and deception of the consuming public— . . . is not distinct from the very harm that trademark laws generally seek to redress and thus is not 'over and above ordinary trademark infringement.'" *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07 Civ. 6959 (DAB), 2009 WL 4857605, at *8 (S.D.N.Y. Dec. 14, 2009) (quoting *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2002)). Coach has not proffered any other evidence bearing on injury to the public interest. Coach's motion for summary judgment is, therefore, denied as to these claims, and summary judgment is granted in favor of defendants on these claims.

### 4. Unfair Competition

"A claim under the Lanham Act, coupled with a showing of bad faith or intent, establishes a claim for unfair competition" under New York state common law. *Burberry Ltd. &*

*Burberry USA v. Designers Imps, Inc.*, No. 07 Civ. 3997 (PAC), 2010 U.S. Dist. LEXIS 3605, at *22 (S.D.N.Y. Jan. 19, 2010). "Use of a counterfeit mark creates a presumption of bad faith under New York law." *Id.* Coach has established defendants' liability under the Lanham Act, and because the evidence shows that defendants used a counterfeit mark, bad faith is presumed. Accordingly, Coach's motion is granted as to this claim.

### 5. Unjust Enrichment

"The elements of unjust enrichment under New York law are: '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, No. 10 Civ. 3998 (PAE), 2012 U.S. Dist. LEXIS 114606, at *62–63 (S.D.N.Y. Aug. 14, 2012) (quoting *Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). These elements have been established here. First, defendants were enriched by their sale of sunglasses bearing marks substantially similar to those of Coach products. Lau Decl. ¶¶ 20–23. Second, defendants' profits were procured without Coach's consent. *Id.* ¶ 26. Third, Coach suffers "monetary loss . . . any time third parties sell goods bearing counterfeit Signature C marks." *Id.* ¶ 17. Defendants do not put forth evidence to the contrary. Accordingly, summary judgment is granted in Coach's favor on this claim.

### C. Fees

#### 1. Statutory Damages

Coach elects to recover statutory damages under 15 U.S.C. § 1117(c)(1), which specifies that, instead of actual damages, "plaintiff may elect . . . to recover, instead of actual damages . . . an award of statutory damages . . . in the amount of—(1) not less than $1,000 or more than

$200,000 per counterfeit mark per type of goods or services sold."[6] The option to elect statutory damages "provides trademark holders an alternative remedy to actual damages because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept[,] . . . making proving actual damages in these cases extremely difficult if not impossible.'" *Union of Orthodox Jewish Congregations of Am. v. Am. Food & Bev. Inc.*, 704 F. Supp. 2d 288, 290–91 (S.D.N.Y. 2010) (quoting S. Rep. No. 104-177, at 10 (1995)).

"The statute 'does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just.'" *Louis Vuitton Malletier v. WhenU.com, Inc.*, No. 05 Civ. 1325(LAK)(DFE), 2006 U.S. Dist. LEXIS 97550, at *9 (S.D.N.Y. Nov. 15, 2006) (Report & Rec.) (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004)), *adopted by* 2007 U.S. Dist. LEXIS 6085 (S.D.N.Y. Jan. 26, 2007). "However, courts have found some guidance in the case law of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c)" and thereby consider factors such as:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Union of Orthodox Jewish Congregations*, 704 F. Supp. 2d at 291 (citation omitted) (quoting *Duty Free Apparel*, 315 F. Supp. 2d at 520).

Here, Coach has only identified two products sold by Horizon for which it is entitled to statutory damages: the two sunglasses purchased by APG on March 24, 2011. For the purpose of awarding damages, however, sunglasses are considered a single type of good. *See Gucci Am.,*

---

[6] Coach does not seek enhanced statutory damages under 15 U.S.C. §1117(c)(2), which applies to willful counterfeiting. Pl. Reply Br. 3, 9–10.

15

*Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK)(DFE), 2008 U.S. Dist. LEXIS 49480, at *10 (S.D.N.Y. Jan. 25, 2008) (Report & Rec.) (stating that "separate 'types' should be based on the functional purpose of the product" and listing, *inter alia*, handbags, wallets, eyeglasses, belts, and watches as different "types"), *adopted by* 2008 U.S. Dist. LEXIS 14047 (S.D.N.Y. Feb. 26, 2008). Thus, the Court may award statutory damages of up to $200,000 in this case because the infringing products are the same type of goods. *See* 15 U.S.C. § 1117(c) ("not less than $1,000 or more than $200,000 per counterfeit mark *per type of goods* or services sold" (emphasis added)).

Considering the factors set forth in *Union of Orthodox Jewish Congregations*, the Court finds an award of $100,000 appropriate. With respect to the first two factors, Coach offered no evidence regarding the profits defendants earned selling counterfeit Coach merchandise or the revenue Coach lost from defendants' infringement, beyond making a general statement that Coach suffers "direct monetary loss anytime third-parties sell goods bearing counterfeit Signature C marks." Lau Decl. ¶ 17. As to the third factor, Coach's brand and trademarks are highly valuable. For example, in 2011, Coach spent $224.4 million in developing, advertising, and promoting the Coach marks. *Id.* ¶ 5. As to the fourth factor, "the goal of deterring similar conduct by other enterprises requires a substantial award." *Louis Vuitton Malletier, S.A. v. LY USA*, No. 06 Civ. 13463 (AKH), 2008 U.S. Dist. LEXIS 107592, at *2 (S.D.N.Y. Oct. 3, 2008). Coach does not seek a finding of willfulness, the fifth factor. Pl. Reply Br. 3, 9–10.

As for the sixth factor, defendants have not provided records to assess the value of the infringing material. Nonetheless, defendants admit that they sold "thousands of Infringing Products," Horizon Admissions ¶ 103; Fang Admissions ¶ 107, which Coach defines as "products bearing logos and source-identifying indicia and design elements that are confusingly

16

similar to or studied imitations of" Coach's marks.[7] Horizon Admissions ¶ 11 (Definitions and Instructions). Further, "given that defendant apparently ran a business substantial enough to allow it to rent space in a highly-trafficked area of Manhattan," Coach's request for a substantial award is appropriate. *Ermenegildo v. 56th St. Menswear, Inc.*, No. 06 Civ. 7827 (HB) (GWG), 2008 U.S. Dist. LEXIS 48411, at *11 (S.D.N.Y. Jun. 26, 2008) (Report & Rec.) (awarding $200,000 per counterfeit mark per type of goods sold), *adopted by* 2008 U.S. Dist. LEXIS 77013 (S.D.N.Y. Oct. 3, 2008).

Finally, a large award is necessary to deter the defendants specifically from continuing their infringing business practices. Not only have defendants used Coach's marks on sunglasses, but Horizon is also the owner of a mark for LV Lou Vin Sunglasses, Horizon Admissions ¶ 19; Fang Admissions ¶ 23, which defendants admit is "inspired" by a mark belonging to Louis Vuitton Malletier. Horizon Admissions ¶ 22; Fang Admissions ¶ 26. Although the Court has no occasion to consider the validity of that mark, it raises a concern that defendants' use of potentially infringing marks may not be confined to those belonging to Coach.

When awarding statutory damages, courts have often issued awards far below the statutory maximum, "particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue and defendant's profits is not in the millions of dollars." *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781 (CM)(AJP), 2009 U.S. Dist. LEXIS 113407, at *21 (S.D.N.Y. Dec. 4, 2009) (Report & Rec.), *adopted by* Order at Dkt. 24; *see also 56th St. Menswear, Inc.*, 2008 U.S. Dist. LEXIS

---

[7] Although a letter to the Court, dated May 4, 2012, from Horizon's counsel, Mingli Chen, Esq., seems to dispute this number, that letter was written more than three months after the deadline had passed for responding to the requests for admission. Accordingly, this fact is deemed admitted.

48411, at *11–12 (awarding $200,000 per counterfeit mark per type of goods sold); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03 Civ. 2132 (GBD)(KNF), 2005 U.S. Dist. LEXIS 28815, at *17 (S.D.N.Y. Nov. 17, 2005) (Report & Rec.) (awarding $125,000 per infringing mark), *adopted by* 2006 U.S. Dist. LEXIS 23462 (S.D.N.Y. Mar. 21, 2006); *MyReplicaHandbag.com*, 2008 U.S. Dist. LEXIS 49480, at *14 (awarding $100,000 per mark per type of good); *Tiffany v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (awarding a total sum of $550,000 for 28 separate counterfeit items, each of which infringed at least four trademarks).

Having carefully considered all these factors, the Court finds that an award of $100,000 per mark per type of good is appropriate and just.

### 2. Attorney's Fees and Investigative Fees

"It is an open question in the Second Circuit [] whether an award of attorney's fees is appropriate where statutory damages are awarded" under the Lanham Act. *Chanel, Inc. v. Xiao Feng Ye*, No. CV-06-3372 (CPS), 2007 U.S. Dist. LEXIS 101383, at *16–17 (E.D.N.Y. Aug. 14, 2007) (Report & Rec.), *adopted by* 2007 U.S. Dist. LEXIS 67583 (E.D.N.Y. Sept. 12, 2007). *Compare WhenU.com, Inc.*, 2006 U.S. Dist. LEXIS 97550, at *16–17 (declining to award attorney's fees), *and Duty Free Apparel*, 315 F. Supp. 2d at 522 (same), *with Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *9 (S.D.N.Y. Feb. 27, 2006) (Report & Rec.) (awarding attorney's fees where infringement was willful), *adopted by* 2006 U.S. Dist. LEXIS 76540 (S.D.N.Y. Sept. 6, 2006), *and Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK)(AJP), 2002 U.S. Dist. LEXIS 10054, at *10–12 (S.D.N.Y. June 5, 2002) (Report & Rec.) (same), *adopted by* Order at Dkt. 16. The Court believes that the award of $100,000 sufficiently advances the goals of deterrence and

compensation in this case. Accordingly, the Court finds that a separate award for attorney's fees and investigative fees is not warranted.

### 3. Injunctive Relief

"To obtain a permanent injunction, [plaintiff] must demonstrate (1) actual success on the merits and (2) irreparable harm." *Duty Free Apparel*, 286 F. Supp. 2d at 290. For the reasons set forth above, Coach has demonstrated success on the merits, and in this Circuit, "a showing of likelihood of confusion establishes irreparable harm." *Id.* (citing *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997). Accordingly, Coach is entitled to a permanent injunction barring defendants from further trademark infringement against Coach.

## CONCLUSION

For the foregoing reasons, Coach's motion for summary judgment is granted as to all claims, except for Coach's state law claims for deceptive trade practices and false advertising, on which summary judgment is granted in favor of defendants. It is hereby ordered that defendants, their agents, and employees are permanently enjoined from selling, offering for sale, advertising, or distributing any counterfeit goods bearing any Coach trademark, or from infringing on any Coach trademarks. A judgment of $100,000 in Coach's favor will be entered in a separate Order. The Clerk of the Court is directed to terminate the motion pending at docket number 27 and to close this case.[8]

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 7, 2012
       New York, New York

---

[8] Does 1-10 were also named as defendants in this case. Coach indicated that it would seek leave to amend once it had ascertained their true identities. Compl. ¶ 10. Coach has not done so. Accordingly, Coach's complaint against these defendants is dismissed without prejudice.